JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Guy E. Selinka ("appellant"), appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm in part, reverse in part, and remand to the lower court.
 I. {¶ 2} According to the case, on October 21, 2005, the Grand Jury returned a six-count indictment against appellant, which included four counts of gross sexual imposition and two counts of kidnapping, with sexual motivation specifications attached to those counts. Appellant moved to bifurcate the sexually violent predator specifications from the underlying charges, and also waived a jury as to those specifications.
 {¶ 3} On August 7, 2006, the matter proceeded to a jury trial, and the jury convicted appellant of all counts, including the sexual motivation specifications. The trial court set the matter for a bench trial on the sexually violent predator specifications. On the same day as the bench trial, appellant filed a written motion for acquittal, pursuant to Crim.R. 29.2. In his motion, appellant argued that his prior conviction for a sexual offense could not be used to support the specification. The docket reflects that the trial court proceeded to trial and, at the close of the state's case, continued the trial to give the state time to respond to appellant's motion. The state filed its opposition to the motion for acquittal, arguing that appellant's prior *Page 4 
conviction for a sexual offense could be used to support the current specification because the applicable statute had been amended.
 {¶ 4} A few weeks later, and on the record, the trial court granted appellant's motion for acquittal. The state appealed that decision inState v. Selinka, Cuyahoga App. No. 89120, 2007-Ohio-5435. This court found that the state's appeal was statutorily barred and dismissed the appeal.
 {¶ 5} Following the jury's verdict, the dismissal of the sexually violent predator specifications, and the appeal, the case was returned to the trial court for sentencing. The trial court imposed a sentence of four years for each of the six counts and ordered that the sentences be served concurrently, resulting in a total term of four years of incarceration.
 {¶ 6} On the same date, the trial court conducted a sexual predator classification hearing. It found, based in part on a previous conviction for a sexually oriented offense, appellant to be a habitual sex offender. The trial court also ordered community notification on the part of appellant.
 {¶ 7} According to the facts, Lisa Dousa and her three daughters, KD, LD, and Ld, resided in a townhouse in Broadview Heights at the time of the crime. The girls were 15, 9, and 6 respectively at the time. KD had her own bedroom, and LD and Ld shared a bedroom with bunk beds.
 {¶ 8} Lisa met the appellant while playing bingo at a local parlor one evening in February 2005. They eventually began a relationship. Appellant was married to *Page 5 
another woman at this time and contends that his relationship with Lisa was merely platonic. However, Lisa disagrees and states that they had a romantic relationship. Either way, during the course of the relationship appellant eventually befriended Lisa's daughters.
 {¶ 9} On May 11, 2005, when the girls went to bed at approximately 9:30 p.m., Lisa and appellant retired to her bedroom. While watching television in Lisa's bedroom, appellant told Lisa he was going to say good night to the girls and use the bathroom. Lisa told appellant not to wake the girls when he said good night.
 {¶ 10} When appellant went into the girls' bedroom, LD was watching the movie Clifford The Big Red Dog, and Ld was asleep. Both girls were in the bottom bunk. Appellant laid down between the two girls. At some point, he reached under each of the girl's nightgowns and underpants and touched their vaginal areas. LD felt gross as he touched her and Ld was nervous. Appellant then took the girls' hands and placed them on top of his erect penis. Before he left the room, he told the girls to keep it a secret. Appellant also told them if they did not keep this a secret, he would hit them.
 {¶ 11} It was not unusual for appellant to tuck the girls in and read them a book. However, he would only remain in their bedroom for a brief period of time. But on this occasion, Lisa became somewhat suspicious, because when he returned to the bedroom his pants were unbuttoned and unzipped. Appellant left Lisa's residence around 10:30 p.m. The following evening, Lisa received a phone call from *Page 6 
her oldest daughter, KD, who told Lisa she needed to come home immediately. Upon returning home, KD told Lisa about the incident. Prior to the phone call, LD approached KD and told her that she had a secret. LD told KD that appellant had touched her the night before, and Ld also told her the same thing.
 {¶ 12} Appellant came to Lisa's residence that same evening and denied the allegations when he was confronted by Lisa. Appellant stated that the girls merely wanted attention. He did admit to kissing them on the cheek and placing his hand on their thighs. As a result of this confrontation, appellant said he would no longer return to her residence. Lisa agreed, and told them they should no longer speak.
 {¶ 13} While Lisa never alerted the authorities about what transpired, she did eventually receive a call from the Department of Children and Family Services. A neighbor had heard LD and Ld discussing the incident with a friend and called the agency. The social worker met with Lisa, and eventually Lisa filled out a police report. The Broadview Heights Police Department became involved, and appellant was eventually indicted and convicted of gross sexual imposition and kidnapping. Appellant now appeals.
 II. {¶ 14} First assignment of error: "The trial court improperly admitted hearsay testimony from the alleged victims' mother and sister, a social worker, and a police officer, which denied Mr. Selinka a fair trial." *Page 7 
 {¶ 15} Second assignment of error: "The trial court erred when it allowed, over objection, Officer Raiff to testify that the alleged victims' accounts were consistent with the statement made to him by their mother."
 {¶ 16} Third assignment of error: "There was insufficient evidence to sustain the convictions for kidnapping."
 {¶ 17} Fourth assignment of error: "One of the two conviction[s] for gross sexual imposition against the Jane Doe II must be reversed because the evidence was insufficient."
 {¶ 18} Fifth assignment of error: "The convictions for kidnapping and one of the convictions for gross sexual imposition are against the manifest weight of the evidence."
 {¶ 19} Sixth assignment of error: "R.C. 2950.09, by failing to establish a criteria as to how to overcome the presumption of community notification for persons who have committed sexually oriented offenses against minors, is unconstitutionally vague."
 {¶ 20} Seventh assignment of error: "Assuming arguendo, that R.C.2950.09 is not vague, then the trial court erred in not making findings in support of its decision to require community notification."
 {¶ 21} Eighth assignment of error: "The trial court erroneously imposed a sentence that exceeded the minimum and concurrent terms of imprisonment." *Page 8 
 {¶ 22} Ninth assignment of error: "The trial court erred by not vacating either counts one or three, as well as either counts two or four."
 III. {¶ 23} Appellant argues in his first two assignments of error that the trial court improperly admitted hearsay testimony from the mother, sister, social worker, and police officer. Because of the substantial interrelation between appellant's first two assignments of error, we shall address them together. Although appellant argues that certain testimony should not have been admitted, the testimony falls under recognized hearsay exceptions and was, therefore, properly admitted.
 {¶ 24} It is well established that the addition, admission, or exclusion of evidence is a matter committed to the sound discretion of the trial court. O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163,407 N.E.2d 490. Consequently, for the admission or exclusion of certain evidence to be overturned on appeal, there must be a showing that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. State v. Davis (1988), 49 Ohio App.3d 109, 550 N.E.2d 966;State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144. The admission or exclusion of evidence rests within the sound discretion of a trial court and will not be overturned absent an abuse of that discretion.State v. Simpson, Cuyahoga App. No. 88301, 2007-Ohio-4301.
 {¶ 25} Victims' statements, made to social workers in the course of their investigation of an abuse allegation, are admissible. State v.Dyer, Cuyahoga App. *Page 9 
No. 88202, 2007-Ohio-1704, at 16, citing State v. Dines (Nov. 1, 1990), Cuyahoga App. No. 57661 ("the testimony of a social worker who examines child victims of sexual abuse is an exception to the rule against hearsay pursuant to Evid.R. 803(4)").
 {¶ 26} Appellant argues that Altiere, the social worker who initially investigated the actions of appellant, improperly testified at various points during the trial. However, we do not find merit in appellant's argument. Altiere's testimony involved statements for purposes of medical diagnosis and treatment and falls under the Evid.R. 803(4) exception. Here, Altiere referred the young victims and other family members for counseling, specifically to address the sexual abuse which happened to the family. During trial, Altiere only briefly summarized her interviews with the children and did not explain in detail every nuance of the interview. She merely stated that the girls admitted to sexual contact by appellant. In addition, appellant argues that Altiere recounted her interview with the mother. However, Altiere only related her personal knowledge of the interview with Lisa and how, based upon the interview, she advised Lisa to file a police report.
 {¶ 27} Appellant also argues that Sergeant Raiff's testimony is improper. However, Sergeant Raiff's testimony relates to the contents of the report and the interview with the two victims. The contents of the report were not offered to prove appellant sexually abused the girls, but rather to demonstrate the steps in the officer's investigation. The statements were merely offered to demonstrate that the *Page 10 
victims were interviewed and made various admissions implicating appellant and, therefore, Raiff was relieved from interviewing the victims. The contents of the report were offered to demonstrate Sergeant Raiff's reasons for not interviewing the girls and not offered for the truth of the matter asserted.
 {¶ 28} Appellant also argues in his first assignment of error that portions of Lisa's testimony were improperly admitted. Lisa's testimony was offered to explain various nuances utilized by Lisa and her daughters to explain human anatomy. Much of Lisa's testimony revolved on the manner in which they concocted these nuances. In addition, there was additional testimony by the girls at trial in which they recounted the sexual abuse and their disclosure to various parties. Accordingly, Lisa's testimony is harmless.
 {¶ 29} Appellant argues in his second assignment of error that the court erred when it allowed, over objection, Sergeant Raiff to testify that the victims' accounts were consistent with the statement made to him by their mother. Appellant argues that this testimony bolsters the testimony of the two victims. However, as stated earlier, the testimony of Sergeant Raiff was not offered for the truth of the matter asserted; it was not hearsay. Accordingly, it could not have been hearsay evidence used to bolster the testimony of the victims.
 {¶ 30} Here, Sergeant Raiff testified that he received the report from the agency, and after he received this report he became better acquainted with the facts and then undertook an investigation. He began his investigation by interviewing *Page 11 
Lisa, Lisa's oldest daughter KD, and appellant. Sergeant Raiff then made a tactical decision not to interview the two young girls. This decision was guided in part by his supervisor. These statements are not hearsay, they are simply statements made by Sergeant Raiff to demonstrate the steps in his investigation.
 {¶ 31} Accordingly, appellant's first and second assignments of error are overruled.
 {¶ 32} Because of the substantial interrelation between appellant's next three assignments of error, we shall address them together. Appellant argues in his third, fourth, and fifth assignments of error that the evidence was insufficient and against the manifest weight of the evidence.
 {¶ 33} The test an appellate court must apply when reviewing a challenge based on a denial of a motion for acquittal is the same challenge based upon the sufficiency of the evidence to support a conviction. The standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence is as follows: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a *Page 12 
reasonable doubt. State v. Thompson (1998), 127 Ohio App.3d 511,713 N.E.2d 456.
 {¶ 34} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 35} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may, nevertheless, conclude that the judgment is against the weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jurors that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, their verdict shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against *Page 13 
the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact-finder's resolution of the conflicting testimony. Id.
 {¶ 36} As to a claim that a judgment is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983),20 Ohio App.3d 172, 20 Ohio B. 215, 485 N.E.2d 717. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
 {¶ 37} It is with the above standards in mind that we begin our analysis of the case at bar. Appellant first argues that the evidence presented was insufficient to prove that he restrained the liberty of either girl. R.C. 2905.01(A) requires that the state prove that the restraint was for one of five purposes.
 {¶ 38} R.C. 2905.01, Kidnapping, provides the following:
 "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: *Page 14 
 (1) To hold for ransom, or as a shield or hostage;
 (2) To facilitate the commission of any felony or flight thereafter;
 (3) To terrorize, or to inflict serious physical harm on the victim or another;
 (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will;
 (5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority;
 (B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 (1) Remove another from the place where the other person is found;
 (2) Restrain another of his liberty;
 (3) Hold another in a condition of involuntary servitude." (Emphasis added.)
 {¶ 39} There was testimony from LD and Ld that appellant laid down in the bed, fondled them, and forced them to fondle him. The girls were not free to get up and go.[1] Appellant further restricted the girls' freedom of movement when he placed his arms on both of the girls' torsos in order to reach into their underpants. *Page 15 
Moreover, when appellant laid down on the bed between the girls, he put himself between the girl and the wall, thereby restricting her freedom of movement even more. Appellant restrained the victims for the purpose of engaging in sexual activity against the victims' will.
 {¶ 40} Appellant also argues that the state only presented evidence sufficient for one count of gross sexual imposition as it pertains to the youngest victim, Ld. Appellant argues that the evidence only demonstrated the touching by appellant. However, appellant is incorrect. Ld specifically testified that in addition to appellant touching her,she was forced to touch appellant. "He took my hand, and made me touch."[2] She specifically stated that she was forced to touch appellant's penis.[3]
 {¶ 41} In addition to the above, substantial direct testimony was provided at trial. Several witnesses testified at trial. Social worker Altiere, Sergeant Raiff, Lisa Dousa, KD, and others all provided substantial evidence supporting the lower court's decision.
 {¶ 42} Based on the substantial evidence in the record, we find no error on the part of the lower court concerning appellant's convictions. Moreover, we find the evidence in the record to be legally sufficient to support the jury verdict as a matter of *Page 16 
law. We find that there is substantial evidence upon which the court could reasonably conclude appellant committed the offenses charged.
 {¶ 43} Accordingly, appellant's third, fourth, and fifth assignments of error are overruled.
 {¶ 44} Appellant argues in his sixth and seventh assignments of error that R.C. 2950.09 is unconstitutionally vague, and the trial court erred in not making findings in support of its decision to require community notification.
 {¶ 45} The Ohio Supreme Court has determined that R.C. 2950 is not unconstitutionally vague. State v. Williams, 88 Ohio St.3d 513,2000-Ohio-428, 728 N.E.2d 342, cert denied (2000), 531 U.S. 902, 148 L.Ed.2d 173, 121 S.Ct. 241; see, also, State v. Sanders (May 15, 2000), Clermont App. No. CA99-07-069.
 {¶ 46} R.C. 2950.09 does not violate the Double Jeopardy Clause and is not unconstitutionally vague. State v. Jenkins, Hamilton App. No. C-020594, 2003-Ohio-3057. R.C. Chapter 2950 has been determined by the Ohio Supreme Court as not unconstitutionally vague; thus, R.C. 2950.09
is not unconstitutionally vague. State v. Gooden, Cuyahoga App. No. 81320, 2003-Ohio-2864, appeal denied by 100 Ohio St.3d 1432,2003-Ohio-5396, 797 N.E.2d 512. Accordingly, we do not find merit in appellant's argument that R.C. 2950.09 is void for vagueness.
 {¶ 47} Appellant argues in his seventh assignment of error that the trial court erred in not making findings in support of its decision to require community *Page 17 
notification. Appellant contends that the lower court articulated no findings or reasons for its decision.
 {¶ 48} We do not find merit in appellant's argument. There is a presumption for community notification when at least two of the offenses are against victims under the age of eighteen. R.C. 2950.09(C)(2)(ii) simply states that if the court does not determine that appellant is a sexual predator, and the court does find that appellant is a habitual sex offender, the court may impose the community notification requirement.
 {¶ 49} There is no requirement that the court must articulate its reasons for the imposition of the community notification requirement. More importantly, under R.C. 2950.09(E)(2), in imposing community notification, "if at least two of the sexually oriented offenses * * * were committed against a victim who was under eighteen years of age, it is presumed that subjecting the offender * * * to community notification provisions is necessary in order to comply with the determinations, findings, and declarations of the general assembly regarding sex offenders * * *."
 {¶ 50} In the case at bar, appellant's convictions involved sexually oriented offenses and were committed against children under the age of eighteen. Appellant sexually abused two minor victims. Clearly, the presumption in this case is in favor of community notification.
 {¶ 51} R.C. 2950.09(C)(2)(c)(ii) provides the following: *Page 18 
 "(ii) If the court determines that the offender is not a sexual predator but that the offender previously has been convicted of or pleaded guilty to a sexually oriented offense other than the offense in relation to which the hearing is being conducted or previously has been convicted of or pleaded guilty to a child-victim oriented offense, it shall include in the offender's institutional record its determination that the offender is not a sexual predator but is a habitual sex offender and the reason or reasons why it determined that the offender is not a sexual predator, shall attach the determinations and the reason or reasons to the offender's sentence, shall specify that the determinations were pursuant to division (C) of this section, shall provide a copy of the determinations and the reason or reasons to the offender, to the prosecuting attorney, and to the department of rehabilitation and correction, and may impose a requirement that the offender be subject to the community notification provisions contained in sections 2950.10 and 2950.11 * * *." (Emphasis added.)
 {¶ 52} There is no requirement in the statute that the court issue specific findings with respect to the community notification requirement. Moreover, because appellant has sexually abused two minor children in two separate convictions, there is a presumption in favor of community notification. The evidence in this case demonstrates no error on the part of the lower court regarding its decision to require community notification.
 {¶ 53} Accordingly, appellant's sixth and seventh assignments of error are overruled.
 {¶ 54} Appellant argues in his eighth and ninth assignments of error that the trial court erroneously imposed its sentence and should have vacated certain counts, respectively.
 {¶ 55} Because of the disposition of appellant's ninth assignment of error, we shall address it first. Specifically, appellant argues that the lower court erred by not *Page 19 
vacating either counts one or three, as well as either counts two or four. The state concedes, and this court agrees, that the lower court erred in merging both counts of kidnapping. The kidnapping in count five should have merged with counts one and three, since these counts all pertain to the same victim. The other kidnapping count, count six, should have merged with counts two and four, since those counts pertained to the other victim. Moreover, the journal entry does not reflect a merger of these counts. The trial court speaks through its journal. Accordingly, this case must be reversed in part and remanded back to the lower court for resentencing.
 {¶ 56} Accordingly, we hereby sustain appellant's ninth assignment of error.
 {¶ 57} Based on the disposition of appellant's ninth assignment of error, we find appellant's eighth assignment of error to be moot.
 {¶ 58} This case is hereby affirmed in part, reversed in part, and remanded for resentencing.
It is ordered that appellee and appellant share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 20 
ANTHONY O. CALABRESE, JR., JUDGE
FRANK D. CELEBREZZE, JR., A.J., and MARY J. BOYLE, J., CONCUR.
[1] Tr. 110-111, 136-137.
[2] Tr. 134.
[3] Tr. 134-135. *Page 1